UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RANDOLPH JOHNSON,

                Plaintiff,

v.                                                     Case No. 23-cv-1475-pp

MILWAUKEE COUNTY, DENITA R. BALL,
WILLIAM DUCKERT and CAPTAIN HUGHES,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Plaintiff Randolph Johnson, who is incarcerated at Milwaukee County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under the Fourteenth Amendment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On November 9, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $48.93. Dkt. No. 5. The court received $50 towards that fee on November 30, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.  Screening the Complaint**

A.  Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The complaint names as defendants Milwaukee County, Milwaukee County Sheriff Denita R. Ball and Jail Captains William Duckert and Hughes. Dkt. No. 1 at 1. The complaint alleges that Sheriff Ball and both captains "are responsible for the policies and procedures in effect at" the jail. Id. at 2. It asserts that the "policies and procedures presently in effect at" the jail "offend the eight [*sic*] and Fourteenth Amendment." Id.

The plaintiff alleges that over the past six months, jail "administration" continued to implement COVID-19 protocols, even though the state and federal regulations expired in May 2023. Id. at 2–3. He says that the jail "is being r[u]n under and [*sic*] extreme restraining schedule for detainees and their families." Id. at 3. The plaintiff alleges that under the schedule, the jail allows detainees out of their cells only from 10:30 a.m. to 1:45 p.m., and then from 3:30 p.m. to 5:45 p.m. Id. He says, "[h]owever, this restraining schedule never happens and most days [detainees] are out 2 or 3 hours" because meals last forty-five minutes and because of "medical services and other extemporaneous staff issues." Id. The plaintiff alleges that there are "several times when [detainees] are locked in for 27 to 28 hours." Id. He asserts that this equates to detainees "being punished with solitary confinement without cause." Id. The plaintiff attached a handwritten schedule of dayroom time that he says the jail provided to detainees in October 2023. Id. at 6.

The plaintiff alleges that "the complaints are endless from detainees and their families." Id. at 4. He says "the emotional distress and mental anguish is so extreme that often detainees refused to lock-in and the 20 to 27 hours lock-ins have provoke[d] detainees to become mentally deranged." Id. The plaintiff contends that some detainees "start kicking the cells doors and yelling and some detainees ask to be taken out under a threat of suicide." Id. He says that on August 11, 2023, twenty-seven detainees "made national news when they refused to lock-in and barracated themselfs [*sic*] in the unit library." Id. He says the detainees "were making a peaceful protest . . . and were asking to be

4

Case 2:23-cv-01475-PP   Filed 03/12/24   Page 4 of 16   Document 7

heard by management but that did not happen." Id. The plaintiff claims that the detainees "got assaulted with gas, Tasers and some got beaten with police batons." Id. The plaintiff asserts that jail staff "did not learn anything from the last six months of constant turmoil," even though "the misguided policies and procedures have created a dangerous setting for everyone." Id. He says segregation housing pods "are full," and some detainees designated for segregation are in the general population housing pods. Id. The plaintiff alleges that other jails in the state, such as the Waukesha County Jail, "are operating under regular schedule" and providing dayroom time to detainees from 7:00 a.m. until 10:00 p.m. Id.

The plaintiff claims that the jail "is running a business at the Jail and it makes up rules that benefits such business." Id. As an example, he says that "the Jail refuses to permit in-person visits, but instead is selling detainees and their families (30) minutes visits for 12[.]00 dollars." Id. The plaintiff asserts that on October 15, 2023, Milwaukee County "decided to show human kindness and is now providing one free 10 minutes [*sic*] video visit per week." Id. at 5. He alleges that each pod has only twelve phones for sixty detainees, and the jail charges sixteen cents per minute. Id. He clarifies that detainees "get 2 free calls per week," but says that "it is impossible to get a phone call during the 2-3 hours dayroom intermidiates [*sic*]" if the detainee is "old or weak and not willing to fight." Id. Finally, the plaintiff alleges that detainees "have all witnessed guards seating [*sic*] inside the PODs for hours, while [they] are b[e]gging to come out of [their] cells." Id.

The plaintiff asks the court to "protect [his] human and constitutional rights," and he asks the court to "appoint legal counsel for the plaintiff in this action." Id. He seeks a court order requiring "the Defendant to go back to regular schedule 7AM to 10PM and to allowed [*sic*] person to person visits for detainees and their families." Id. at 7. He also seeks $2000 "per each day in custody under these misguided policies and procedures" and asks the court to order "the defendant . . . to pay back all profits made from the phone and zoom visits." Id.

C. Analysis

The court begins by asking the identify of the proper defendant. The plaintiff names Milwaukee County as a defendant, and he says that Sheriff Ball and Captains Duckert and Hughes were responsible for the policies that he challenges. But the complaint does not allege that Sheriff Ball or Captains Duckert and Hughes *personally* took any action that violated the plaintiff's rights. Nor does the complaint mention any individual or allege that any jail or county employee violated the plaintiff's rights. The plaintiff seeks to proceed against the county, the sheriff and the captains because he believes that the policies and procedures he has described are violating his rights. The plaintiff's claims are properly construed as claims asserted against the defendants in their official capacities as the county sheriff and as captains at the jail. See Budd v. Motley, 711 F.3d 840, 843 (7th Cir. 2013) (citing Hill v. Shelander, 924 F.2d 1370, 1372–73 (7th Cir. 1991)). Because a "claim against a government employee acting in his official capacity is the same as a suit directed against

the entity the official represents," Sanders v. Sheahan, 198 F.3d 626, 629 (7th Cir. 1999), the court construes the plaintiff's claims as alleged against Milwaukee County only.

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of New York City, 436 U.S. 658, 691 (1978) (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To sufficiently allege municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The complaint alleges that the jail's policies restrict detainees' access to time outside their cells and visits from their family. The plaintiff says that the conditions caused by the policies have strained detainees' mental health and

violated their rights. The complaint does not specify whether these are jail policies or county-implemented policies that the jail must follow. But construing the complaint in the light most favorable to the plaintiff, the court reasonably can infer that Milwaukee County implemented an official policy or practice at the jail that caused the alleged violation of the plaintiff's rights.

The plaintiff was a pretrial detainee at the time he filed the complaint, and he remains at the jail. The court analyzes his claims regarding the conditions of his confinement under the Fourteenth Amendment. See Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 856 (7th Cir. 2017). A pretrial detainee's constitutional rights may be violated when jail officials act unreasonably to objectively serious living conditions that deprive the detainee of basic human needs. See Smith v. Dart, 803 F.3d 304, 309–10 (7th Cir. 2015). To state a claim regarding the conditions of his confinement, the plaintiff must allege that the conditions in question are objectively serious; the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and the defendant's conduct was "objectively unreasonable"—that is, it was not "'rationally related to a legitimate non-punitive governmental purpose'" or was "'excessive in relation to that purpose.'" Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)).

Because pretrial detainees have not yet been convicted of a crime, they cannot be punished. Bell v. Wolfish, 441 U.S. 520, 535–36 (1979). The government may punish a pretrial detainee for his own misconduct that occurs

while in pretrial confinement, see Rapier v. Harris, 172 F.3d 999, 1002–03 (7th Cir. 1999), but the plaintiff alleges that detainees at the jail have committed no misconduct justifying the strict policies. He alleges that the jail has maintained COVID-19 policies that limit detainees' time outside of their cells for recreation, meals and medical appointments and the type and frequency of their calls and family visits. He alleges that the jail provides detainees only two to three hours of time out of their cells each day (or less), which he equates to being in solitary confinement without cause. He says detainees are sometimes locked into their cells for more than twenty-four hours straight. He asserts that there are sixty detainees and only a dozen phones per housing pod, so detainees often fight over free phone calls. He alleges that detainees otherwise must pay per minute for phone calls and per half-hour for Zoom calls.

The court finds that these allegations, though they describe unpleasant conditions, do not allege enough to state a claim for a violation of the plaintiff's rights. The primary problem with the complaint is that the allegations are stated generally. The plaintiff generally says that detainees are allowed only two to three hours out of their cells, but he does not allege whether or how often *his* recreation time has been limited. He says detainees must fight over free phone calls, but he does not allege whether *he* has been forced to fight for his time at the phone. He says some detainees have been locked in their cells for over twenty-four hours straight, but he does not say whether *he* has been locked-in that long. The plaintiff discusses an incident from August 2023 involving several dozen detainees, but he does not say whether *he* was involved in that

incident or explain how the August 2023 incident is relevant to *his* claims about *his* incarceration.[1] He alleges that detainees must pay for Zoom calls and that they are suffering from suicidal thoughts. But nowhere does the complaint allege that *the plaintiff* has had to pay for Zoom calls or that *he* is suffering from mental-health issues. The plaintiff does not have standing to assert the rights of any other detainee. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). He cannot proceed on his complaint based on the experience of any person except himself, and he has not specified what hardships or experiences he *personally* has suffered at the jail.

Even if the plaintiff had explained how the alleged conditions are affecting him, those allegations would not be enough to state a Fourteenth Amendment claim. He alleges that detainees generally receive two to three hours of time out of their cells per day, but that "several times" some detainees have been locked-in for twenty-seven or twenty-eight hours. He does not say how many times is "several times" or how often this has occurred. Another court in this district rejected the claim brought by detainees at the Milwaukee County Jail that they were locked in their cells for five days continuously, had to eat meals in their cells, had limited recreation time and telephone access and were not provided showers. See Torres v. Milwaukee County Jail, No. 14-cv-1454, 2015 WL 3872325, at *3 (E.D. Wis. June 22, 2015). The Seventh

---

[1] The Milwaukee County In-Custody Locator shows that the plaintiff was not incarcerated in August 2023; he has been at the jail since September 2, 2023. See http://www.incustodysearch.mkesheriff.org.

Circuit more recently held that allegations from a Milwaukee County Jail detainee that he spent "40 to 48 hours in his cell six times over an 11-month period . . . without more, does not approach the kind of objectively severe condition that supports a constitutional claim." Gilmore v. Anderson, Case No. 22-2989, 2023 WL 4118577, at *2 (7th Cir. June 22, 2023) (citing Budd, 711 F.3d at 842–43, and Murphy v. Walker, 51 F.3d 714, 720–21 (7th Cir. 1995)); see also Delaney v. DeTella, 256 F.3d 679, 683–84 (7th Cir. 2001) (finding that "short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation"). The allegations in the plaintiff's complaint are similar to, but perhaps less severe than, those that these courts rejected, and he provides even less detail than those plaintiffs about the conditions of his confinement.

The plaintiff also has not alleged that any of the challenged policies or procedures were implemented as punishment. He alleges that the policies remain from the COVID-19 pandemic, which suggest an administrative oversight more than they suggest that he is being punished without cause. They also may suggest a lack of resources or "other extemporaneous staff issues," as the plaintiff describes it. Dkt. No. 1 at 3. The court may provide the plaintiff relief if the jail has unfairly punished him. But he has not alleged that it has. And the court does not have the authority to order the jail to implement the wide-ranging administrative changes that the plaintiff seeks, including a return to "regular schedule" hours, in-person visits and back pay for detainees who had to pay for Zoom visits. See Westefer v. Neal, 682 F.3d 679, 683 (7th

Cir. 2012) (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

The plaintiff may be unhappy with the conditions of his confinement at the jail. But the complaint fails to allege that he personally is suffering from any of the deprivations about which he complains. Nor does the complaint allege "the kind of objectively severe condition that supports a constitutional claim." Gilmore, 2023 WL 4118577, at *2.

The court will dismiss the complaint because it does not state a claim. But it is possible that the plaintiff may be able to state a claim if he amends the complaint to provide additional detail. The court will give him an opportunity to amend his complaint to correct the deficiencies the court has noted and to better explain the claims in his complaint. When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

As a final note, the court will deny without prejudice the plaintiff's request that the court recruit counsel to represent him. The court is dismissing the complaint and giving the plaintiff an opportunity to file an amended complaint. If the plaintiff complies with that order, and if this case moves forward, he may renew his request that the court help him find an attorney to represent him. The court advises the plaintiff that a civil litigant has no right to have an attorney represent him in a civil action. The court has the discretion to recruit counsel for an indigent self-represented litigant, but *pro bono* resources are scarce in comparison to the number of cases filed by prisoners. As a result, the court will exercise its discretion to find a lawyer to represent a plaintiff only after the plaintiff has made reasonable attempts to find a lawyer himself, and

only if the court believes that "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013) (quoting Pruitt v. Mote, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). The plaintiff must explain how his request satisfies both of those criteria before the court will consider recruiting him an attorney.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **April 12, 2024**. If the court receives an amended complaint by the end of the day on April 12, 2024, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on April 12, 2024, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$150** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

14

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Office of the Sheriff, Fiscal Operations, Rm 224, 821 W. State Street, Milwaukee, WI 53233.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 12th day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**