UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RANDOLPH JOHNSON,

      Plaintiff,

v.                 Case No. 23-cv-1475-pp

MILWAUKEE COUNTY and JOHN DOES,

      Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 8) UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

---

On March 12, 2024, the court screened plaintiff Randolph Johnson's *pro se* complaint under 42 U.S.C. §1983 and determined that it did not state a claim. Dkt. No. 7. The court dismissed the complaint and gave the plaintiff an opportunity to file an amended complaint within thirty days—by April 12, 2024. Id. at 14. The court received the plaintiff's amended complaint but not until April 17, 2024. Dkt. No. 8. This order screens the amended complaint.

**I. Screening the Amended Complaint**

  A. <u>Federal Screening Standard</u>

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The amended complaint names as defendants Milwaukee County and two John Doe defendants. Dkt. No. 8 at 1. As in the original complaint, the plaintiff alleges that Milwaukee County "has a pattern of allowing unconstitutional conditions of confinement at the jail." Id. at 2. He says Milwaukee County "has condoned in [*sic*] a practice" of maintaining COVID-19 protocols even after State and federal states of emergency had expired in May 2023. Id.

The plaintiff alleges that he is a pretrial detainee and has been at the jail since September 2, 2023. Id. He says that at that time, the jail allowed dayroom time from 10:30 a.m. to 1:45 p.m., and then from 3:30 p.m. to 5:45 p.m. Id. He says the "jail hours of day room time went back effective February 18th 2024." Id. He does not say what those hours are now. The plaintiff alleges the "restraining schedule on most days never happened due to medical services and daily meals," so detainees would receive only one to three hours of dayroom time a day. Id. The plaintiff alleges that there are sixty-plus detainees who share twelve phones and six showers, "so there[']s not enough time for occupants to get anything done without commotion." Id. at 2–3. The plaintiff says that because of these restrictive policies, he has "suffered emotional distress, deprived of sleep, lack of fresh air, lack of sunlight, fear of safety, inadequate ability to exercise and constant health problems." Id. at 3.

3

Case 2:23-cv-01475-PP   Filed 05/13/24   Page 3 of 11   Document 9

The plaintiff alleges that the jail houses convicted prisoners with pretrial detainees, and he says "[o]ften there[']s been threats to [him] and fights between others at the time of this extreme restraining schedule." Id. He says this joint housing has "cause[d] for [him] a safety concern." Id. He further alleges that "[s]egregation inmates are also put in the housing unit and they cause disturbance as[]well as other detainees so there [is] no way to sleep." Id. The plaintiff complains that the HVAC system at the jail "has poor ventilation in rooms," so he "had to be put on a nasal spray, a stronger steroid for [his] asthma due to difficulty breathing in cells." Id. This is the only "health problem" he details in the amended complaint. Id. He alleges that he was not permitted face-to-face visits and had to pay $6.00 for a video visit, although he also says he was "give[n] a free complimentary 10 minutes per week." Id. He says he is indigent, so this cost forced him "to choose between commissary needs or seeing [his] family." Id. But he also says that the jail "give[s] two free calls per week." Id. The plaintiff compares these conditions to the Milwaukee House of Corrections, which he says has "onsite visiting hours" from 8:00 a.m. through 11:00 a.m., and again from 1:00 p.m. to 4:00 p.m. Id.

The plaintiff says the conditions of his confinement at the jail violate his rights under the Fourteenth Amendment. Id. He seeks $2,000 per day from September 2, 2023 through February 18, 2024, when he was subjected to the alleged conditions at the jail. Id. at 4. He also seeks "[i]njunctions to implement a way to ensure fresh air, sunlight, adequate exercising and to go back to on site visits." Id. He also asks the court to order the jail to house convicted

persons separately from pretrial detainees and to provide "more than 10 free complimentary visits per week (via video) until they are ready to open onsite visits again." Id.

C.   Analysis

In its previous order, the court inferred that the plaintiff wanted to sue Milwaukee County, which he alleged was responsible for the conditions at the Milwaukee County Jail. Dkt. No. 7 at 6–7. The court explained that a local government (such as Milwaukee County) may "be held liable under §1983 only for its own violations of federal law." Id. at 7 (citing Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010); and Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). To allege municipal liability, the plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)).

The plaintiff alleges that Milwaukee County is responsible for the restrictive policies at the jail between September 2023 and February 2024. He says these restrictive policies include significantly reduced dayroom time (sometimes as little as one hour per day), too few showers and phones for all detainees to use, shared housing for convicted prisoners and pretrial detainees, limited video calls and no in-person visits. As with the original complaint, the court finds that the amended complaint sufficiently asserts that Milwaukee

County "implemented an official policy or practice at the jail that caused the alleged violation of the plaintiff's rights." Dkt. No. 7 at 8.

The court explained in the previous order that because the plaintiff was a pretrial detainee at the time of the alleged events, the court must analyze his claims regarding the conditions of his confinement under the Fourteenth Amendment. See Dkt. No. 7 at 8 (citing Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 856 (7th Cir. 2017)). The plaintiff's rights as a pretrial detainee may be violated if jail officials act unreasonably to objectively serious living conditions that deprive the detainee of basic human needs. See Smith v. Dart, 803 F.3d 304, 309–10 (7th Cir. 2015). To state a claim regarding the conditions of his confinement, the plaintiff must allege that the conditions in question are objectively serious; the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and the defendant's conduct was "objectively unreasonable"—that is, it was not "'rationally related to a legitimate non-punitive governmental purpose'" or was "'excessive in relation to that purpose.'" Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)).

The plaintiff reiterates many of his allegations from the original complaint about limited dayroom time, limited phones and showers and a pay-per-use system for video and phone calls. But he newly alleges that the jail gives complimentary phone time and "two free calls per week," which suggests that the conditions are not as harsh as he initially alleged. The plaintiff also

newly alleges that he has occasionally been threatened by other detainees or prisoners, but he does not say he has been attacked or in a fight. (He says only that there have been fights between other detainees or prisoners.) He newly alleges that some detainees make noise that makes it difficult for him to sleep, the jail has poor ventilation and he has had to take a nasal spray and stronger medication for his asthma.

For the same reasons explained in the previous order, the court finds that the amended complaint does not state a claim. The court explained in the previous order that the plaintiff's allegations, "though they describe unpleasant conditions, do not allege enough to state a claim for a violation of the plaintiff's rights." Dkt. No. 7 at 9. The court explained that the Seventh Circuit Court of Appeals and courts in this district have rejected similar claims from detainees at the Milwaukee County Jail alleging harsher conditions than the plaintiff does. Id. at 10–11 (citing Gilmore v. Anderson, Case No. 22-2989, 2023 WL 4118577, at *2 (7th Cir. June 22, 2023); Delaney v. DeTella, 256 F.3d 679, 683–84 (7th Cir. 2001); and Torres v. Milwaukee County Jail, Case No. 14-cv-1454, 2015 WL 3872325, at *3 (E.D. Wis. June 22, 2015)). The court again finds that the alleged conditions "are similar to, but perhaps less severe than, those that these courts rejected." Id. at 11. The allegations in the amended complaint are largely identical to those in the original complaint, and none of the plaintiff's new allegations impact the court's conclusion. The plaintiff says that his asthma flared up at the jail, but he was provided medication. He says he has been threatened by other detainees or incarcerated persons but does not alleged that

he was harmed. He says some detainees make it difficult for him to sleep, but that is not unusual for any jail or prison. Although the plaintiff's experience at the jail is undoubtedly unpleasant, he alleges "nothing that exceed[s] 'the general level of discomfort anyone can expect to experience while in custody.'" Hardeman, 933 F.3d at 824–25 (quoting Tesch v. County of Green Lake, 157 F.3d 465, 476 (7th Cir. 1998)).

The plaintiff also still has not alleged that any of the alleged conditions were imposed as punishment, instead calling them "misguided policies" stemming from the COVID-19 pandemic. Dkt. No. 8 at 3. As the court explained in the previous order, the plaintiff's allegations "suggest an administrative oversight more than they suggest that he is being punished without cause." Dkt. No. 7 at 11. The court reiterates that even if the plaintiff's allegations had suggested his rights were being violated, "the court does not have the authority to order the jail to implement the wide-ranging administrative changes that the plaintiff seeks." Id. at 11–12 (citing Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012)).

The court dismissed Sheriff Ball and Captains Duckert and Hughes in the previous order because the original complaint did not allege that they "*personally* took any action that violated the plaintiff's rights." Dkt. No. 7 at 6. The amended complaint has the same flaw, but now the plaintiff has named John Doe defendants instead of specific officials. The amended complaint does not explain what position these persons held, does not detail their involvement in the alleged conditions and again does not say that they "*personally* took any

action that violated the plaintiff's rights." Id. Simply suing these potential defendants, without alleging what each did to violate his rights, is not enough to hold them liable under §1983. The plaintiff "must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). By failing to provide any information about the John Doe defendants or their involvement in the alleged conditions at the jail, the amended complaint fails to state a claim against them.

Like the original complaint, the amended complaint alleges that the plaintiff faced generally unpleasant conditions. The amended complaint is more specific about what conditions the plaintiff himself faced compared to other detainees generally. But it still does not allege "the kind of objectively severe condition that supports a constitutional claim." Gilmore, 2023 WL 4118577, at *2. For the same reasons that the court dismissed the original complaint, the court will dismiss the amended complaint. Because the plaintiff provided no new information in his amended complaint sufficient to state a viable claim, the court will not give him a second opportunity to amend his complaint.

## II. Conclusion

The court **CONCLUDES** that the plaintiff's amended complaint fails to state a claim. Dkt. No. 8.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g). The court will email a copy of this order to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule

60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of May, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**